**IN THE DISTRICT COURT FOR THE VIRGIN ISLANDS**
**ST. CROIX DIVISION**

| | | |
|---|---|---|
| **GERARD ABATE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PLESSEN MANAGEMENT SERVICES,** | : | |
| **LLC** | : | **NO. 23-0004** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                **June 2, 2026**

Plaintiff Gerard Abate, M.D. agreed to provide outpatient and cardiac testing services for patients of Plessen Management Services, LLC, in return for a percentage of fees collected for those services. Each party claims the other breached the agreement. Abate contends Plessen failed to pay him his share of the fees for medical services provided to Plessen's patients as required by the agreement. Plessen counters that Abate abruptly terminated the contractual relationship before he was entitled to payment.

Moving for summary judgment, Plessen maintains that the undisputed facts prove that Abate breached the contract when he left for more lucrative employment without giving the required notice. Plessen contends that it suffered losses as a result of Abate's sudden departure. Abate responds that the facts indisputably show Plessen failed to pay him, justifying his termination of the agreement.

We conclude that the undisputed evidence proves Abate breached the agreement. What losses, if any, Plessen suffered as a result of the breach are disputed. Therefore, we shall grant Plessen's motion to the extent it seeks judgment of liability on the breach of contract counterclaim and leave the assessment of damages for a jury.

The facts suggest Plessen also breached the agreement by failing to pay Abate as required by the terms of the Agreement.  Thus, we will deny Plessen's motion to the extent it seeks judgment in its favor on Abate's claim of breach.

**Background**

Plessen provides outpatient medical consultation and testing services in St. Croix. Abate, a cardiologist, began working for Plessen on February 16, 2022, without a written employment agreement.[1] On March 22, 2022, he entered into a two-year Independent Contractor Agreement ("Agreement").[2] He agreed to perform medical consultation services and cardiac testing in return for a percentage of Plessen's collections from insurers for his services.[3] Section 7 detailed this arrangement. It states:

> 7.    **TERMS OF PAYMENT.** PMGT shall pay Independent Contractor according to the following terms and conditions: An amount previously discussed and mutually determined and modified or updated by mutual consent.
>
> (a)    Thirty-five percent (35%) of actual collections received by Plessen Healthcare for consultation services/clinic visits provided by Dr. Gerard Abate …; and Forty (40%) of actual collections received by Plessen Healthcare for cardiac testing performed by Dr. Gerard Abate … after subtracting costs for personnel and equipment specific to testing only.[4]

---

[1] Compl. 1, ECF No. 1.

[2] Defendant/Counterclaimant Plessen Management Services' Statement of Material Facts in Support of Plessen's Motion for Summary Judgment ["Def.'s SOF"] 2, ECF No. 97; Independent Contractor Agreement ["Agreement"] §6, ECF No. 101-3. The Agreement dated back to February 16, 2022.

[3] Agreement §§ 1, 7(a).

[4] Agreement § 7.

The Agreement did not set a schedule of payments. Abate claims he and Dr. Jan Bijan Tawakol, Plessen's co-owner and Chief Executive Officer,[5] orally agreed during negotiations that Plessen would pay Abate a monthly stipend to be credited against collections reconciled at the end of each quarter.[6] Plessen denies such an oral agreement.[7]

Even though Plessen had not yet collected payments for services Abate provided, it advanced him $13,411.96 on May 6, 2022, and $9,966.62 on July 11, 2022, a total of $23,378.58.[8] These payments were an estimate of what Plessen believed would be collected based on Abate's services.[9]

Plessen could not bill and collect payments from insurers for services Abate provided until he was credentialed by V.I. Equicare, a physician credentialing service.[10] The credentialing process took months to complete.[11] The parties dispute who was

---

[5] Deposition of Jan Tawakol ["Tawakol Dep."] 36:19–24, 84:19, ECF No. 101-5.

[6] Plaintiff's Statement of Disputed Facts ["Pl.'s SDF"] ¶ 3, ECF No. 106.

[7] Defendant Plessen Management Services, LLC's Reply to Plaintiff's Opposition to Plessen's Motion for Summary Judgment ["Def.'s Reply"] 2, ECF No. 111.

[8] Def.'s SOF ¶ 18.

[9] Compl. ¶ 15; Pl.'s SDF ¶¶ 3, 18; Def.'s SOF ¶ 18.

[10] Pl.'s SDF ¶ 21; Def.'s SOF ¶ 21; Tawakol Dep. 50:20–52:7; V.I. Equicare, Inc., https://viequicare.com/join-vi-equicare/ (Last visited May 26, 2026). V.I. Equicare is an independent preferred provider organization in the Virgin Islands. Providers in the V.I. Equicare network have access to private payers with negotiated rates. Practitioners must be credentialed to participate in the network.

[11] Pl.'s SDF ¶ 32; Def.'s SOF ¶ 32.

responsible for the delay. Plessen claims Abate "delayed and failed to submit the required information and paperwork required by [V.I. Equicare] …."[12] Abate blames Plessen.[13]

On August 8, 2022, Abate emailed Tawakol, notifying him that he was quitting to take a higher paying job. Abate wrote:

> I regret to inform you that I have had an offer that came up very suddenly in pharma that I can't turn down. It's to head their R&D and medical affairs and manage their phase III trial program in the US. The commitment they need is full time and they made me an offer I can't refuse in salary and stock. With that said I have to make next Thursday my last day. I enjoy working here but I also feel like I've been working for free and there is no way I could ever make close to what they have offered me. We will be leaving the island and will have a lot to do to get things sold or given away before we leave.[14]

V.I. Equicare had informed Plessen on July 21, 2022, that Abate was accepted for credentialing.[15] On August 9, 2022, Tawakol instructed a Plessen employee to "forward the welcome package to Dr. Abate for signature."[16] She did. And Abate returned the signed document the same day.[17] Plessen was then able to bill insurers for Abate's services.[18] No one offers an explanation for the 19-day delay in notifying Abate that he

---

[12] Def.'s SOF ¶ 31; Decl. Dr. Jan B. Tawakol ["Tawakol Decl."] ¶ 6, ECF 101-15.

[13] Plaintiff's Memorandum in Opposition to Defendant/Counterclaim Plaintiff Plessen Management Services Motion for Summary Judgment ["Pl.'s Mem. Opp'n Mot. Summ. J."] 2, ECF No. 105; Pl.'s SDF ¶ 9.

[14] Def.'s Ex. 6, Termination Email ["Termination Email"], ECF No. 101-6.

[15] Def.'s SOF ¶ 32.

[16] Plaintiff Gerard Abate, M.D.'s Supplemental Responses to Defendant's First Set of Interrogatories and Request for Production of Documents ["Pl.'s Supp. Resps."], ABATE 000077–78, ECF No. 101-9.

[17] *Id.*

[18] Def.'s SOF ¶ 32.

had been approved. Curiously, Plessen did not notify Abate that he had been credentialed until the day after Abate tendered his resignation.

The record is unclear about Abate's involvement with Plessen in the months following his departure. Tawakol testified that after he left, Abate "did follow up on some patients … after our staff reached out to him requesting him to write the follow-up especially of all the mammograms he performed [because] those results were directly sent to him and the patients were asking for the results."[19] Tawakol claims this follow-up was legally required and had been billed prior to Abate's departure.[20] Abate remained available for virtual cardiology consultations through October 2022.[21] Plessen continued to collect payments from insurers after Abate left. Yet, it made no payments to him after the May and July advances.

In his complaint, Abate demanded at least $96,000.[22] After reviewing Plessen's records, he now contends he was owed at least $63,955.85, of which $40,577.27 remains unpaid.[23] According to Plessen, Abate is not entitled to any sum. Instead, Plessen claims he owes it $9,336.20.[24]

### Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine

---

[19] Tawakol Dep. 83:17–23.

[20] *Id.* at 86:12–19.

[21] Pl.'s SDF ¶ 35.

[22] Compl. ¶ 16.

[23] Pl.'s Mem. Opp'n Mot. Summ. J. 8. Abate's opposition relies on estimated amounts. We use specific numbers from the record.

[24] Def.'s SOF ¶ 27.

dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 592 (3d Cir. 2018) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

In examining a motion for summary judgment, we must view the facts in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (citing *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)).

Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135–36 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

6

## Analysis

### *Breach of Contract*

To succeed on a breach of contract cause of action, the plaintiff must establish: (1) an agreement; (2) a duty created by the agreement; (3) a breach of that duty; and (4) damages as a result. *Mosler v. Gerace*, 78 V.I. 649, 664–65 (V.I. 2024) (quoting *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 473 (V.I. 2013)).

Plessen counterclaims that Abate breached Section 8 of the Agreement when he abruptly terminated the Agreement on August 8, 2022, notifying Tawakol his last day with Plessen would be August 19, 2022.[25] It argues he failed to comply with the requisite notice requirements under Sections 8(c) and (d).

The applicable provisions are:

> 8.    **TERMINATION.**   This Agreement can be modified only by a written instrument signed by both parties, but may be terminated by either party before its expiration date of February 16th  2024, as follows:
> …
>
> (c)     Independent Contractor may terminate this Agreement for any other reason upon ninety (90) days written notice to PMGT at its last known address.
>
> (d)     Either party may terminate this Agreement for cause if the other materially breaches this Agreement. If a party believes the other has so breached this Agreement, it shall give the other written notice of each such claimed breach; the party who receives that notice shall have five (5) days to cure the cited breaches. If the party who gave such notice is not

---

[25] Memorandum in Support of Defendant/Counterclaim Plaintiff Plessen Management Services' Motion for Summary Judgment ["Def.'s Mot. Summ. J."] ¶¶ 26–27, ECF No. 98.

satisfied that each breach has been cured, it may terminate
this Agreement upon three (3) days written notice.[26]

This provision allowed Abate to terminate the Agreement without cause or for cause. If termination was for cause, he had to notify Plessen of the breach and give Plessen five (5) days to cure it. If he terminated without cause, Abate had to give ninety (90) days' notice.

In his notice to Plessen, Abate advised that he was leaving for a higher paying job.[27] Only now, he adds that Plessen failed to pay him a monthly stipend and the Plessen office environment was dysfunctional and hazardous.[28]

Abate did not assert a material breach in his notice. He did not suggest a cure, let alone demand one. He was not seeking a solution. He had already accepted another job and was leaving St. Croix. Thus, he cannot invoke Section 8(d) of the Agreement to justify terminating it for cause.

Abate's reference that he felt he was working for free expresses dissatisfaction with the slow or inconsistent pay. He did not assert or suggest this was a breach. Plessen's failure to pay a monthly stipend was not a reason given for his leaving. Even if there were an enforceable agreement requiring Plessen to pay a monthly stipend, Section 8(d) required Abate to give Plessen notice of the breach. It is undisputed that he did not. Thus, he was required to give the 90-day notice under Section 8(c).

Abate argues that Plessen waived the 90-day notice requirement under Section 8(c) "when, in response to Dr. Abate's notice of termination … Plessen failed to object to

---

[26] Agreement § 8.

[27] Termination Email, ECF No. 101-6.

[28] Pl.'s SDF ¶ 5.

Dr. Abate's short notice, and instead encouraged his departure by suggesting tapas restaurants in Barcelona where Dr. Abate was travelling to his new employer."[29] Tawakol sent the tapas email on August 16, 2022, eight days after Abate notified Plessen of his termination.[30] Abate relies on theories of equitable estoppel and implied waiver.

To successfully invoke equitable estoppel, Abate must demonstrate: (1) Plessen made a material misrepresentation; (2) he reasonably relied on it; and (3) his reliance was to his detriment. *Newrez LLC v. Plaskett*, No. CV 2015-0070, 2023 WL 6390069, at *6 (D.V.I. Sept. 30, 2023) (citing *Browne v. Stanley*, 66 V.I. 328, 334–335 (V.I. 2017)). Waiver is "the voluntary relinquishment of a known right." *Rivera v. Sharp*, No. CV 2008-0020, 2021 WL 2228492, at *11 (D.V.I. June 1, 2021) (quoting *Sunshine Shopping Ctr., Inc. v. KMart Corp.*, 85 F. Supp. 2d 537, 543 (D.V.I. 2000)), *aff'd*, No. 21-2254, 2022 WL 2712869 (3d Cir. July 13, 2022). "[W]aiver can be determined as a matter of law, where only one reasonable conclusion can be drawn from the undisputed facts." *Id.* at *11 (quoting *In re Metro. Int'l, Inc.*, 616 F.2d 83, 86 (3d Cir. 1980)).

Plessen argues the tapas email is not a waiver. We agree.

There is no evidence that Tawakol or Plessen made a material misrepresentation. The tapas email suggests places to eat. Tawakol did not mention or refer to the Agreement or Abate's employment. It cannot be construed as Plessen's intentionally relinquishing or abandoning its right to enforce the Agreement.

Viewing the facts in the light most favorable to Abate and drawing all reasonable inferences in his favor, we conclude the undisputed facts show that he breached the

---

[29] Pl.'s Opp'n ¶ 4.

[30] Tapas Email from Dr. Tawakol ["Tapas Email"], ECF No. 106-6.

Agreement and that Plessen did not waive any rights to enforce it. What damages or offsets there are as a result of Abate's breach are in dispute. Hence, we will grant the motion to the extent it seeks judgment of liability on Plessen's crossclaim for Abate's breach of contract.

### Abate's Breach of Contract Claim

Abate alleges that Plessen breached Section 7, the Terms of Payment provision, when it failed to pay him the agreed percentage of collections for his services. The dispute is whether Plessen had a duty to compensate Abate for collections Plessen received after Abate's last day, August 19, 2022. Plessen does not dispute that it received payments after Abate left for services billed by him before leaving.

Abate claims the total amount of collections for his services through February 2023 was $182,731.[31] He contends he is entitled to at least $63,955.85 (35% of $182,731),[32] of which he has been paid only $23,378.58. Thus, according to Abate, Plessen still owes him $40,577.27.

Plessen maintains that Abate's entitlement to payment ended when he terminated his employment in breach of the Agreement on August 19, 2022. Plessen claims the total amount of collections for Abate's services as of that date was $115,033.72.[33] Of this amount, Abate's share was $36,522.47 (35% of $104,349.91) for consultation services and clinic visits, and $4,273.52 (40% of $10,683.81) for cardiac testing.[34] Plessen

---

[31] Pl.'s Opp'n Mot. Summ. J. 5; Pl.'s SDF ¶ 13; Plessen Billings and Collections Spreadsheet, Pl.'s Ex. 4 attached to Pl.'s SDF, ECF No. 106-5; Def.'s Ex. 7, Plessen Billings and Collections Spreadsheet, ECF No. 101-7.

[32] Pl.'s Opp'n Mot. Summ. J. 5.

[33] Declaration of Dr. Jan B. Tawakol ["Tawakol Decl."] ¶ 11, ECF No. 101-15

[34] Tawakol Decl. ¶ 11.

contends Abate is entitled to $40,795.99 in compensation under the terms of the Agreement for his time with Plessen.[35] But, it reduces this amount by the $23,378.58 it advanced in May and July, and $26,753.61 it paid for expenses that were Abate's responsibility under Section 5 of the Agreement.[36] After reducing these amounts from the total payment it believes Abate had earned, Plessen argues Abate owes it $9,336.20. These calculations are disputed.

Section 7(c) of the Agreement limits Abate's compensation after the Agreement is terminated:

> (c) If this Agreement is terminated or expires, Independent Contractor is not entitled to any monies from PMGT except for any past due, unpaid monies by PMGT to Independent Contractor and monies which would have been otherwise paid in the ordinary course of business.[37]

Abate contends "[m]onies collected by Plessen for Dr. Abate's services would be monies paid in the ordinary course of business."[38] Plessen argues the parties were not acting in the ordinary course of business after Abate unilaterally terminated the contract on August 8, 2022.[39] It claims Section 7, read as a whole, forecloses any payments after termination of the Agreement; and, if payment of any collections post-termination is

---

[35] Tawakol Decl. ¶ 11; Agreement § 5 ("Independent Contractor shall supply all equipment, tools, materials, and supplies to accomplish designated tasks. Expenses of a general business nature (i.e., not directly attributable to a particular client), should be reviewed to determine if PMGT should reimburse Independent Contractor, or recommend that Independent Contractor absorb the expense.").

[36] Def.'s Mot. Summ. J. ¶ 7; Def.'s SOF ¶¶ 15–17, 26 (room remodeling, electrical work, purchase and shipment of treadmill, malpractice expenses, share of Echo tech); Tawakol Decl. ¶ 11 (Treadmill: $7,602; Echo Tech: $1,520; Malpractice Insurance: $4,163.34; Room Preparations: $12,468.27; and Electrical: $1,000).

[37] Agreement § 7(c).

[38] Pl.'s Opp'n Mot. Summ. J. ¶ 2.

[39] Def.'s Mot. Summ. J. ¶ 27.

allowed, it will render the "not entitled to any monies … except for" language meaningless.[40] Plessen contests Abate's right to percentages of post-departure collections, claiming portions of these amounts were related to "services not rendered directly by [Abate] but requested or ordered by him."[41] It believes Abate should not be compensated for collections post-termination where he did not follow through with patient care. The Agreement does not elaborate on how compensation would be determined under such circumstances.

Section 7(c) clearly requires Plessen to pay Abate for services he had provided through August 19, 2022 and for which Plessen collected payment in the ordinary course of business after that date. The Agreement contemplated that Abate would be paid for services he provided before the Agreement was terminated. It is undisputed Plessen did not pay Abate after his departure for the percentage of collections received for Abate's services which he had provided while still employed with Plessen. Such payments to Abate would have been made in the ordinary course of business. The exact amount due is in dispute and whether there were expenses to be deducted from what Abate is owed is disputed. If a jury finds there is a balance due to Abate, it may find Plessen breached the Agreement.

---

[40] *Id.* ¶ 27.

[41] Tawakol Dep. 85:3–24.

Abate claims Plessen breached an oral agreement to pay him a $10,000 monthly stipend.[42] He first mentioned the monthly payment in his deposition on January 18, 2024.[43]

> [M]y understanding was that [Tawakol] was going to pay me a stipend on a regular basis, and then we would even this up at the end of a quarter, you know, based on reimbursements. And a gentleman's agreement, is that ok? I said, you know, sure, that's fine. So I took him at his word that he was going to be honorable and be a gentleman and do what he said he was going to do.[44]

Plessen denies there was any agreement to pay a monthly stipend.[45] It argues that it had no obligation to compensate him until it had collected for his services from insurers.[46] Plessen characterizes the two payments as "an advance against what Plessen was able to project that Plessen might actually collect from [Abate's] performance of services."[47] Plessen argues that any evidence of prior discussions is precluded by the parol evidence rule.[48]

When the language of a contract includes a clear and unambiguous merger clause, extrinsic evidence may not be used to contradict or add to the intent expressed in the

---

[42] Pl.'s Opp'n Mot. Summ. J. 2; Pl.'s SDF ¶ 3.

[43] Notably, Abate did not mention an oral stipend agreement while employed with Plessen, or in his termination email on August 8, 2022, his complaint filed on February 3, 2023, his responses to interrogatories dated October 2, 2023 (ECF No. 101-8) or his December 8, 2023 supplemental responses (ECF No. 101-9). The interrogatories asked Abate to provide a narrative version of events which caused him to terminate the contract and to list every justification that entitled him to terminate the contract.

[44] Abate Dep. I 105:13–20, ECF No. 101-1.

[45] Def.'s Reply 2.

[46] Def.'s Mot. Summ. J. ¶ 9.

[47] Def.'s Mot. Summ. J. ¶ 9.

[48] Def.'s Reply 4.

contract. *FirstBank P.R. v. Harthman Leasing III, LLLP*, 2025 V.I. 18, ¶ 22 (V.I. 2025) (quoting *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (V.I. 2017)). A merger clause "limits the parties solely to the contract's written terms." *Id.* It precludes evidence of "antecedent understandings and negotiations" that varies or contradicts the written content. *Id.*

Section 8 states the Agreement "can be modified only by a written instrument signed by both parties …."[49] This provision expresses the parties' intent to be limited by the Agreement's written terms. Evidence of antecedent stipend negotiations would modify and add to the Terms of Payment provision, resulting in terms inconsistent with the written agreement. If enforced, it would require Plessen to make payments prior to receiving collections in direct contradiction of the clear, unambiguous language of the Agreement. Thus, Abate can not rely on an oral agreement that he was to be paid a stipend.

Nevertheless, viewing the facts in a light most favorable to Abate, we conclude Plessen may have breached the Agreement when it failed to compensate Abate for collections received after his last day for services he performed before his departure. We cannot determine what amount, if any, Plessen owes him. Thus, we will deny Plessen's motion to the extent it seeks judgment on Abate's breach of contract claim.

### Breach of Duty of Good Faith and Fair Dealing

Plessen moves for summary judgment on its breach of the duty of good faith and fair dealing and its intentional interference counterclaims. Although Abate does not move for summary judgment, it is appropriate under the circumstances to enter judgment for Abate on these claims. *See Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 223–24 (3d Cir. 2004) (cautiously recognizing an exception to the notice requirement

---

[49] Agreement § 8.

for *sua sponte* grants of summary judgment where there is a fully developed record, a lack of prejudice, or a decision resting on a purely legal issue). The record has been fully developed. Plessen has garnered its best arguments and evidence in support of its claims. It will suffer no prejudice from lack of further notice in our ruling that the facts preclude its breach of the duty of good faith and fair dealing and intentional interference claims.

To prevail on a cause of action for breach of the implied duty of good faith and fair dealing, Plessen must prove that in the performance or enforcement of the Agreement, Abate engaged in conduct that was fraudulent, deceitful or otherwise inconsistent with the purpose of the Agreement or the reasonable expectations of the parties. *Agueda v. Marcano*, 79 V.I. 533, 552 (V.I. 2024) (citing *Roebuck v. V.I. Hous. Auth. & Gov't of the V.I.*, 60 V.I. 137, 146 (V.I. Super. Ct. 2014)).

"The implied duty of good faith and fair dealing is limited by the original bargain … prevent[ing] a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Id.* Where the contract terms are clear, the implied duty of good faith and fair dealing will not supersede the contract's express language. *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 272 (3d Cir. 2004).

Plessen argues that Abate's "sudden termination was clearly conduct that was inconsistent with the Agreement's purpose,"[50] and he "knew what would happen when he left without notice."[51] It also characterizes Abate's job search and negotiations with

---

[50] Def.'s Mot. Summ. J. ¶ 36.

[51] *Id.* ¶ 38.

another employer as "secretly orchestrat[ed]."[52] But, that does not transform his actions into fraud, deceit or actions inconsistent with the purpose of the Agreement.

Had Abate provided the required 90-day notice, his departure would have been consistent with the Agreement. Abate would have had three months to follow up with Plessen's patients who had tests ordered by him.

Plessen points to Abate's "sudden abandonment of his practice"[53] and leaving "without notice"[54] as conduct inconsistent with the purpose of the Agreement. It is. But, this conduct is grounded in Abate's failure to provide 90 days' notice, a breach of an express term – Section 8(c). Abate's early termination is proscribed by the terms of the Agreement and does not constitute a breach of the duty of good faith and fair dealing. *See Arvidson v. Buchar*, 71 V.I. 277, 339 (V.I. Super. Ct. 2019) ("the implied duty of good faith and fair dealing … prevents a party's acts or omissions that, *though not proscribed by the contract expressly*, are inconsistent with the contract's purpose and deprive the other party of the contemplated value ... [and it] *operates as a supplement to the express contractual covenants*, to prevent a contracting party from engaging in conduct which (*while not technically transgressing the express covenants*) frustrates the other party's rights to the benefits of the contract.") (emphasis added) (quoting *Basic Servs., Inc. v. Gov't of the Virgin Islands*, 71 V.I. 652, 663–64 (V.I. 2019)); *see USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) ("Such implied covenants and any express terms of a contract are necessarily mutually exclusive–one can invoke 'implied' terms only

---

[52] *Id.* ¶ 39.

[53] *Id.* ¶ 37.

[54] *Id.* ¶ 38.

when there are no express terms in the contract relating to the particular issue."); *Gillis v. Respond Power, LLC*, No. 14-3856, 2018 WL 3427636, at *8 (E.D. Pa. July 16, 2018), *aff'd*, 803 F. App'x 631, 634 (3d Cir. 2020).

Plessen is not entitled to summary judgment on the duty of good faith and fair dealing cause of action. Abate is.

### Interference with Existing and Prospective Business Relationships

To succeed on its intentional interference with existing and prospective business relationships claim, Plessen must prove: (1) the existence of a professional business relationship between Plessen and a third party; (2) Abate knew of the relationship; (3) he interfered with it by improper means or for an improper motive; and (4) Plessen suffered damages as a result of Abate's interference. *Love Peace v. Banco Popular de Puerto Rico*, No. 2019-0057, 2022 WL 374274, at *2 (V.I. Feb. 7, 2022) (citing *Rondon v. Caribbean Leasing & Eco. Transp., Inc.*, 74 V.I. 397 (V.I. Super. Ct. 2021)).

The record is devoid of facts that Abate acted with improper motive or purposely interfered with Plessen's current or prospective patient relationships. His intent was to pursue a more lucrative position, not to damage or compete with Plessen's business. *Cf. Arvidson v. Buchar*, 71 V.I. 277, 350–51 (V.I. Super. Ct. 2019).

Nor do the facts show that Abate used improper means. Plessen must "show that the means employed were 'illegal, independently tortious, or that [they] violate[d] an established standard of a trade or profession.'" *Arvidson*, 71 V.I. at 342–43 (alteration in original) (citation omitted). Plessen argues that Abate's abandoning his practice violated ethical responsibilities, including those of the Virgin Islands Board of Medicine, which

requires a physician to give patients 30 days' notice of terminating their care.[55] The patients were not abandoned, they remained under Plessen's care. Tawakol's own testimony confirms Abate continued to serve patients after Abate had notified Plessen he was leaving.[56]

The undisputed facts show that Plessen cannot prove a intentional interference cause of action. Thus, Abate is entitled to judgment as a matter of law on this claim.

### Conclusion

Plessen's motion for summary judgment will be granted in part and denied in part. The undisputed facts establish that Abate breached the Agreement by failing to give the required notice, and that Plessen may owe Abate a percentage of collections received after his departure for services he had performed before his departure. What he is owed and how much are disputed.

Judgment on Plessen's counterclaims for breach of the duty of good faith and fair dealing, and intentional interference with business relationships will be deferred until resolution of the remaining claims.

---

[55] Def.'s Mot. Summ. J. ¶ 45. Plessen does not specify the rule it is refers to.

[56] Tawakol Dep. 83:17–23, 86:12–16.

18